UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MICHAEL K. ROBISON,

          Plaintiff,

  v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

          Defendant.

No. CV 04-1286-MO

OPINION AND ORDER

**MOSMAN, J.,**

Claimant Michael Robison seeks judicial review of the Commissioner of the Social Security Administration's (SSA) final decision finding that he is not disabled and therefore ineligible for Social Security Disability (SSDI) benefits. Plaintiff argues that the Administrative Law Judge (ALJ) erred by: (1) improperly rejecting the opinions of his treating doctor, (2) improperly rejecting other lay testimony, (3) improperly assessing the severity of his impairments in the analysis at Steps 2 and 3, (4) improperly rejecting plaintiff's testimony, and (5) providing the Vocational Expert (VE) with a deficient hypothetical. Exercising jurisdiction under 42 U.S.C. § 405(g), the court conducted a thorough and careful review of the record and AFFIRMS the Commissioner.

**I.    Administrative History**

Plaintiff filed an application for SSDI on June 18, 2001. The application was denied in the first instance and on reconsideration. On January 21, 2003, an ALJ held a hearing, and plaintiff was represented by counsel. Plaintiff and Susan Burkett, a VE, testified at the hearing. At the hearing, the ALJ granted plaintiff's request to amend his alleged onset date to January 1,

2000. Tr.[1] at 687.

The ALJ issued a decision on April 18, 2003, finding plaintiff is not disabled and therefore ineligible for benefits. That decision became the agency's final decision on July 14, 2004, when the Appeals Council denied his request for review.

**II.     Background**

    **A.     Plaintiff's Testimony**

At the time of the hearing, plaintiff was forty-eight years old and married to his second wife. He resides with his wife and a live-in caretaker, Ms. Christien. Tr. at 686. He earned a high school diploma and vocational training in mechanical repair. His past work experience includes operations manager, materials handler at a warehouse, auto body painter, director of manufacturing, and manufacturing engineer. Tr. at 718-20. Plaintiff's last job, operations manager in manufacturing, ended in June of 1996.

Plaintiff testified he has problems with back pain, hernia, numbness in his hands and legs, skin rash[2], Hepatitis C, obesity, shortness of breath, post-traumatic stress disorder (PTSD), nightmares, memory loss, frequent use of the restroom, and a depressive disorder. To alleviate the pain associated with these difficulties, plaintiff stated that he spent approximately half of every day lying down at home. He testified that these problems prevent him from doing basic daily activities, including tying shoelaces, putting on socks, showering, standing for more than 20 minutes, sitting for more than one hour, and lifting more than 10 pounds. He claims these

---

[1] Citations to the official transcript of record submitted by the Commissioner are referred to as "Tr."

[2] Mr. Robison receives a service-connected disability for this rash caused by Agent Orange.

problems prevent him from working.

He suffered an injury to his left, non-dominant, hand in 1974 resulting in the amputation of four fingers. Tr. at 691. Plaintiff received treatment for substance abuse, physical therapy, and psychiatric treatment for depression and PTSD. Tr. at 701, 705, 708-709.

### B. Medical Evidence

Plaintiff developed leg and lower back pain after he sustained an on-the-job injury in 1992. Tr. at 491. Plaintiff underwent at least two courses of physical therapy during 1992-1993. In 1993, Dr. Gambee examined plaintiff and found a congenital bone abnormality in his back, but an x-ray report concluded the study was essentially normal. Tr. at 496. The back pain increased over the years, exacerbated by a large weight gain during the period following an abdominal surgery in 1999.[3] On November 15, 2001, examining physician (EP) Dr. Penner conducted a consultative examination that noted plaintiff's obesity as well as a tender palpation in plaintiff's lower back and joint tenderness. Tr. at 182.

In December 2001, plaintiff was referred by Disability Determination Services (DDS) to Dr. Joe Wood, Psy.D., for a consultative psycho-diagnostic evaluation. Tr. at 183-186. After meeting with plaintiff and reviewing the medical record from EP Dr. Penner, Dr. Wood concluded that plaintiff "presented as somewhat depressed, but his mental status functioning was intact." Tr. at 184. Dr. Wood also administered a TOMM test, designed to ferret out malingering. Tr. at 185. Dr. Wood expressed concern, based on the results of this test, about plaintiff's "ambivalence about being depressed," and then described plaintiff as "incongruent

---

[3] Plaintiff underwent surgery for a liver biopsy in connection with his Hepatitis C, and during the surgery, his gall bladder was unintentionally lacerated, necessitating removal. Tr. at 211.

about being depressed and vague about symptoms." Tr. at 185-186. Finally, Dr. Wood opined that Mr. Robison did not seem to be reliving trauma for PTSD. Tr. at 185.

In January 2002, Dr. Charles Spray, a consulting physician for DDS, reviewed plaintiff's file and determined that he could lift and carry up to 20 pounds on occasion, up to 10 pounds frequently, and suffered from no other physical limitations. Tr. at 473-480. With regards to plaintiff's mental impairments, another DDS reviewer, Dr. Dick Wimmers, Ph.D., reviewed his file in January 2002. Dr. Wimmers noted that plaintiff had a depressive syndrome, but this impairment caused only "mild" limitations in daily living activities, social functioning, concentration, persistence, and pace. Tr. at 469. Dr. Wimmers concluded that plaintiff's impairments were not severe. Tr. at 459.

Dr. Lucas, plaintiff's primary care physician, referred him to psychiatrist Susan Smith, M.D. for an evaluation of depression. On August 20, 2001, Dr. Smith performed a psychiatric examination, diagnosing recurrent Major Depressive Disorder, PTSD related to military trauma[4], and rated his level of psychosocial functioning as "fair" at GAF 50. Tr. at 248. Medical records indicate that plaintiff visited treating psychiatrist Dr. Smith on six occassions. Dr. Smith's medical chart entries from December 2001 indicate "[s]ince being on the citalopram, [Mr. Robison] notes no side effects and notes improvement in his depression, concentration, irritability, and ability to carry through on activities." Tr. at 203. Entries from August and November of 2002 also suggest that plaintiff's mental state was generally improving. Tr. at 543, 546.

---

[4] The military trauma occurred in 1974 when Mr. Robison's left hand was crushed in a tank hatch as he was helping to load the tank onto a C5-A airplane. Tr. at 691. This is what led to the amputation of four fingers on his non-dominant hand.

PAGE 4 - OPINION AND ORDER

On January 14, 2003, Dr. Smith opined that plaintiff's back pain and morbid obesity prevented him from doing physical labor, he has difficulty interacting appropriately with coworkers, and he would be unable to do sedentary work because of his inability to concentrate. Tr. at 657. Due to these impairments, that Dr. Smith causally linked to plaintiff's psychiatric condition, Dr. Smith concluded, "I feel that [he] is unable to sustain full-time employment and will continue to be unable to sustain competitive, full time employment for at least 12 months and probably permanently as his various conditions are likely to worsen with time rather than improve." Tr. at 657.

**III.     Standards**

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b). In Step Two, the claimant is not disabled if the Commissioner determines the claimant has no "medically severe impairment or combination

of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.945(a); s*ee also* Social Security Ruling (SSR) 96-8p. In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e). If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e), (f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Yuckert*, 482 U.S. at 141-42; s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(f)(1).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## IV. The ALJ's Decision

The ALJ found that plaintiff had not performed any substantial gainful activity since January 1, 2000. Tr. at 24. He also found that plaintiff has several severe impairments, including degenerative disc disease, obesity, PTSD, and depressive disorder, but that none of these meet or equal the relevant Listing of Impairments. Tr. at 24. Next, the ALJ reviewed the medical evidence and assessed plaintiff's RFC, finding that plaintiff:

> "retains the residual functional capacity to lift and carry up to 10 pounds. He can sit without limits, in one-hour increments, and stand/walk 2 hours in a workday, in 10-minute increments. He is capable of simple, routine, repetitive work, with only occasional public interaction."

*Id*.

The ALJ also found that plaintiff's testimony about his impairments and how they affect his capacity to work were not entirely credible when viewed in light of other evidence in the record. Tr. at 24. The ALJ ascribed little weight to the assessment given by Dr. Smith because her report was both inconsistent with plaintiff's daily activities and appeared to be based entirely

PAGE 7 - OPINION AND ORDER

on plaintiff's subjective statements. *Id*. at 21. Also detracting from the persuasive value of Dr. Smith's report was the fact that other medical practitioners did not reach the same conclusion. *Id*. Finally, based on the RFC assessment and the testimony of VE Burkett, the ALJ concluded that while plaintiff is unable to perform the type of work he has in the past, there are several jobs plaintiff could perform[5] that exist in substantial numbers in the economy.

## V. Analysis

Plaintiff contends the ALJ erred by: (1) improperly rejecting the opinions of his treating doctor, (2) improperly rejecting other lay testimony, (3) improperly assessing the severity of his impairments in the analysis at Steps 2 and 3, (4) improperly rejecting plaintiff's testimony, and (5) providing the VE with a deficient hypothetical. The Commissioner contends the ALJ's decision is supported by substantial evidence and is free from legal error.

### A. Dr. Smith's Opinions

Plaintiff argues that the ALJ improperly rejected the opinion of his treating psychiatrist Dr. Smith. It is well-settled that "greater weight is afforded to the opinion of a treating physician than to that of [a] non-treating physician, because the treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993) (internal citations omitted). Whether a treating physician's opinion will be given significant weight depends on factors such as the length of time of the examining relationship, the nature and extent of the treatment relationship, the degree to which the treating source's opinion is supported by medical signs and laboratory findings, and its

---

[5] The ALJ identified the following possible jobs: small products assembly, sporting goods small products assembly, and microfilmer. Tr. at 25.

PAGE 8 - OPINION AND ORDER

consistency with the rest of the evidence. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ may reject the contradicted opinion of a treating or examining physician by stating specific and legitimate reasons; the ALJ may reject an uncontradicted treating or examining physician opinion by providing clear and convincing reasons, supported by substantial evidence in the record. *Batson v. Comm'r Social Security*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Rodriguez*, 876 F.2d at 761-62.

The court must first determine whether Dr. Smith's opinion is contradicted. Plaintiff contends that no other medical opinion in the record "is in express contravention" of Dr. Smith's opinion, and hence Dr. Smith's opinion is uncontradicted. Pl.'s Br. at 10. Dr. Smith opined that plaintiff suffered from PTSD, the nightmares associated with PTSD, and depression that resulted in difficulty getting out of bed in the morning, significant anger outbursts and concentration deficits. Tr. at 21, 657. Additionally, Dr. Smith concluded that plaintiff is "unable to return to physical labor jobs due to his back pain and morbid obesity which prevent him from sitting, standing, or bending for any prolonged period of time." Tr. at 657. Medical evidence from at least three other sources contradicts Dr. Smith's opinion. Dr. Wood's psychodiagnostic examination contradicts Dr. Smith's opinion in three ways: (1) Dr. Wood found that plaintiff did not seem to be reliving trauma for PTSD, and dreamed about the trauma only infrequently, (2) Wood concluded that plaintiff seemed to be merely "mildly depressed," and (3) Dr. Wood noted that plaintiff's daily routine included getting out of bed at approximately 10:00 a.m., taking care of rabbits, doing yard work and laundry, and watching television. Consulting physician Dr. Spray contradicts Dr. Smith in his determination that plaintiff could lift and carry up to 20 pounds on occasion, up to 10 pounds frequently, and suffers from no postural or other physical limitations. Tr. at 473-480. Finally, Dr. Smith's opinion is contradicted by

Dr. Wimmers, Ph.D., who determined that plaintiff's depressive syndrome was not severe and caused only "mild" limitations in daily living activities, social functioning, concentration, persistence, and pace. Tr. at 469. Thus, there is considerable evidence contradicting Dr. Smith's opinion.

The ALJ set out a detailed and thorough summary of the facts and conflicting clinical evidence, and he offered specific and legitimate reasons for discounting Dr. Smith's contradicted opinion. First, the ALJ found that other medical evidence in the record detracted from the persuasiveness of Dr. Smith's opinion. "The clinical findings at psychiatric and physical examinations, as discussed above, do not support Dr. Smith's assessment and other medical practitioners did not reach her conclusion." Tr. at 21. These are factors that the ALJ is entitled to consider when deciding what weight a treating physician's opinion should be given. *See* 20 C.F.R. § 404.1527(d)(2). Dr. Wood conducted a psychodiagnostic examination in December of 2001 and found that plaintiff "presented as somewhat depressed, but his mental functioning was intact." Tr. at 20, 184. Additionally, Dr. Wood's examination revealed signs of malingering, described plaintiff as being "incongruent" in recounting his symptoms, and did not seem to be reliving trauma for PTSD. The findings of Drs. Spray and Wimmers also indicate that plaintiff does not suffer from severe impairments, nor is his exertional capacity significantly hindered. In sum, the ALJ pointed out several points of inconsistency between treating physician Dr. Smith's opinion and the other medical findings in the record.

Plaintiff contends that the ALJ overlooked the overall consistency between Dr. Smith's opinion and the record as a whole, including medical evidence from the 1990s. Pl.'s Reply Br. at 3. Though the record does contain some evidence consistent with Dr. Smith's opinions, the

PAGE 10 - OPINION AND ORDER

legal standard this court must apply looks to whether the Commissioner's decision is supported by substantial evidence. The inconsistencies between the opinions of treating Dr. Smith and Drs. Wood, Spray, and Wimmers constitute this substantial evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Second, the ALJ found that Dr. Smith's own clinical observations "do not show significant limitations from depression or PTSD" and thus detracted from her opinion of plaintiff's ability to work. While it is true that Dr. Smith's clinical notes include references to plaintiff's depression and PTSD-related symptoms, the ALJ found that these chart notes appear to be no more than a recitation of what plaintiff reported to her. Tr. at 238-250. Because the ALJ found plaintiff to be not fully credible in his reporting of subjective complaints, *see infra*, the ALJ was permitted to reject Dr. Smith's opinion. *See Tonapetyan*, 242 F.3d at 1149 (holding that ALJ may disregard a doctor's opinion that is premised on subjective complaints made by a claimant whose credibility the ALJ discounted).

Third, the ALJ noted that Dr. Smith's conclusion is inconsistent with plaintiff's daily living activities. Tr. at 21. The ALJ pointed to support in the record for this observation by reference to clinical notations from July 2001, indicating: "[Mr. Robison's] daily activities include riding his bike, repairing bikes and other electronics devices, and swimming in his pool. The veteran indicates that his bike rides are long and take him from Beaverton to Portland several times per week." Tr. at 21, 275. Other chart notations, as well as plaintiff's own testimony, reveal that he worked in his yard and took care of rabbits, dogs and cats. Tr. at 280, 714. In January 2002, plaintiff reported that he walked or went roller-blading for exercise. Tr. at 21, 457. The ALJ concluded that, "[o]n the whole, these activities do not support his

allegations of significant limitations and disability. Certainly, these activities are not consistent with the claimant's need to lie down for much of the day." Tr. at 22. This evidence of plaintiff's daily activities constitutes specific, record-based reasons that justify the ALJ decision to discredit Dr. Smith's conclusion.

Fourth, the ALJ is not required to give controlling weight to a physician's opinion as to the ultimate issue of whether a claimant is legally disabled. *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (explaining that a physician's opinion of disability is not a legal opinion that establishes disability under the Social Security Act because a legal determination of disability involves both a medical and a vocational component).

In sum, the ALJ provided specific, legitimate reasons for giving less weight to Dr. Smith's contradicted opinion. The record clearly demonstrates that Dr. Smith relied on plaintiff's self-assessment, and as discussed below, there is substantial evidence supporting the ALJ's conclusion that plaintiff's statements were not credible. The inconsistencies between Dr. Smith's opinions and other medical evidence in the record lent further support for the ALJ's decision. Inconsistencies between plaintiff's daily activities and Dr. Smith's opinion add to the quantum of evidence upon which the ALJ relied in discrediting Dr. Smith's opinion.

**B.    Lay Testimony**

Next, plaintiff contends the ALJ erred in failing to consider statements from lay persons. Pl.'s Br. at 9. The ALJ is required to consider lay testimony in determining whether a disability exists. 20 C.F.R. § 404.1513(d). The ALJ must give specific reasons germane to the witness before rejecting lay testimony. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("Lay testimony as to a claimant's *symptoms* is competent evidence which the [Commissioner] must

take into account, unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'") (internal citations omitted).

Plaintiff fails to articulate exactly what lay testimony the ALJ failed to consider. VE Burkett and plaintiff were the only persons who testified at the hearing. The ALJ's decision indicates "third party reports from the claimant's friend and parents have been reviewed" and these reports provided additional information about plaintiff's alleged limitations in physical activity. Tr. at 22. The ALJ found these reports to be credible to the extent they are consistent with medical evidence; but the ALJ determined that the reports were inconsistent with plaintiff's daily activities. *Id*. At no point did the ALJ reject outright the third party reports. The reasons given by the ALJ for partially discounting the third party reports are germane to the persons who made those reports, plaintiff's friend and his parents. The court concludes these reasons are sufficient to support the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (contradiction by medical evidence is legitimate reason for rejecting lay opinion).

C.  **Assessment of Severity of Impairments**

Plaintiff contends the ALJ erred at Step Two of the sequential analysis when he found that plaintiff's severe impairments included only degenerative disk disease, obesity, PTSD and a depressive disorder, and excluded Hepatitis C and the hand injury. The record, according to plaintiff, contains "simply no evidence the ALJ considered any limitations from the [Hepatitis and hand injury] impairments." Pl.'s Reply Br. at 5. Plaintiff further contends that even if the Hepatitis C and hand injury do not qualify as severe impairments, the ALJ erred by not considering them in combination with the severe impairments in the overall determination of disability. The court is not persuaded that deficiencies exist in the ALJ's Step 2 analysis. The

PAGE 13 - OPINION AND ORDER

claimant bears the burden to establish a severe impairment. *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). After reviewing all the evidence presented, the ALJ noted that plaintiff's liver tests were normal and there were no indications in the record that the Hepatitis C resulted in any limitations that would render it a "severe impairment." Tr. at 21, 541, 577. Similarly, with respect to plaintiff's hand injury, the ALJ noted that plaintiff sustained the injury in 1974, the four fingers were reattached, and plaintiff thereafter continued to work "for years with this impairment and even re-enlisted in the Army." Tr. at 21. Therefore, the ALJ did not err in excluding Hepatitis C and the hand injury from the list of severe impairments.

Plaintiff also faults the ALJ for failing to properly consider equivalence at Step 3. A finding of medical equivalence is directed if the "medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526. Plaintiff labels as legally insufficient the ALJ's simple assertion that he "considered all the impairments, but as shown in the evaluation of the medical evidence below, the claimant's impairments do not meet or equal the criteria of any of the conditions identified in any listings." Tr. at 18. The Commissioner responds that although the ALJ must consider whether the claimant's impairments meet the criteria, he is not also required to recite each criterion in his analysis. As to plaintiff's equivalence argument, the law does not require an ALJ to discuss the combined effects of a claimant's impairments "unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005), citing *Lewis*, 236 F.3d at 514. Because the initial burden is on the claimant, and because plaintiff failed to offer a theory as to how his impairments combined to equal a listing, the court finds that the ALJ did not err at Step 3. Remand in order to call a medical expert to testify as to equivalence is not necessary.

### D. Plaintiff's Testimony

Plaintiff argues that the ALJ failed to articulate clear and convincing reasons for finding plaintiff's subjective statements about his condition "not . . . fully credible." Tr. at 26. "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Once a claimant establishes the existence of a severe impairment and a causal link between that impairment and some symptoms, and there is no evidence of malingering, then in order to reject a claimant's subjective claims, the ALJ must provide clear and convincing reasons, supported by substantial evidence. *See Morgan v. Comm'r of Social Security*, 169 F.3d 595, 599 (9th Cir. 1999). In determining credibility, the ALJ may use the "'ordinary techniques of credibility evaluation,' such as the claimant's reputation for truthfulness and any inconsistent statements in her testimony," *Tonapetyan*, 242 F.3d at 1148 (quoting *Fair*, 885 F.2d at 604 n.5), claimant's daily activities, and medical evidence tending to discount the severity of subjective claims. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

The record contains evidence of malingering, and the Commissioner contends that this is itself sufficient to discredit plaintiff's subjective complaints. *See Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ pointed to evidence in the record that during plaintiff's examination for back pain at the Veteran's Administration Hospital in July 2001, the examiner noted that "he engaged in exaggerated pain behaviors such as moaning,

grimacing, and jumping," and noted a question of secondary gain[6] in plaintiff's presentation. Tr. at 20, 284. Another medical examiner, Dr. Penner, examined plaintiff in November 2001, and opined that "the claimant's pain allegations were out of proportion to his physical findings." Tr. 182. Dr. Penner also described plaintiff as exhibiting an "exaggerated display of losing his balance when he [did] his toe-heel walk." Tr. at 181. Dr. Wood's assessment provided additional evidence of plaintiff's lack of sincerity, as Dr. Wood listed a rule-out diagnosis for malingering, observed plaintiff to be inconsistent, vague about symptoms, and that his TOMM testing was ambivalent. Tr. at 20, 185. Plaintiff criticizes the medical evidence of malingering as not rising to the level of affirmative evidence that he is not credible. However, even if the aforementioned "evidence is susceptible to more than one rational interpretation," the court must uphold the Commissioner's decision as long as it is based on substantial evidence. *Andrews*, 53 F.3d at 1039-40. In light of the observations by three medical examiners, the court finds that the ALJ's credibility assessment of plaintiff is supported by substantial evidence.

In addition to the evidence of malingering, plaintiff's credibility was also undercut given the inconsistencies, both internally and with other record information, presented by his testimony. Significantly, plaintiff's daily activities belie his claimed need to lie down for more than half of each day. The ALJ provided specific reasons for rejecting plaintiff's subjective statements. The facts relied on by the ALJ establish "such relevant evidence as a reasonable mind might accept as adequate to support" the conclusion that plaintiff is not credible. *Andrews*, 53 F.3d at 1039. Thus, the ALJ did not err in finding he lacked credibility.

---

[6] Secondary gain involves feigning or exaggerating symptoms in hopes of receiving something as a result and is characteristic of malingering. *See Diagnostic and Statistical Manual of Mental Disorders* 739-740 (4th ed. TR 2000).

PAGE 16 - OPINION AND ORDER

### E. VE Hypothetical

Hypothetical questions posed to the VE must include all limitations and restrictions of the particular claimant, including pain and inability to lift certain amounts of weight. *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988). Plaintiff argues the ALJ improperly omitted several limitations from the hypothetical posed to the VE, and as such, erroneously concluded he can perform work existing in significant numbers in the national economy. This argument is based on plaintiff's assertion that the ALJ improperly rejected evidence establishing his limitations, i.e., Dr. Smith's opinion, his testimony, and other lay witness testimony. As the court has already addressed and rejected all of these arguments, the court finds no error in the ALJ's exclusion of this evidence from the VE's hypothetical, or in the ALJ's conclusion that he is not disabled.

## VI. Conclusion

The court finds that the decision of the Commissioner is supported by substantial evidence in the record and must be upheld. The ALJ did not err in giving limited weight to Dr. Smith's opinions or in partially discrediting the lay testimony submitted by plaintiff as both were inconsistent with the other medical evidence in the record. The ALJ did not err in assessing plaintiff's impairments or in presenting the hypothetical to the VE. Finally, the ALJ did not err in finding that plaintiff's testimony was not fully credible. Therefore, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

DATED this   7th    day of November, 2005.

                          /s/ Michael W. Mosman
                          MICHAEL W. MOSMAN
                          United States District Judge